## Case No. 15,885.

### UNITED STATES v. NINE TRUNKS.

[22 Int. Rev. Rec. 317.]

Circuit Court, D. New Jersey. Sept. Term, 1877.

CUSTOMS DUTIES—ILLEGAL IMPORTATION—REMOVAL FROM VESSEL.

1. The act of July 18, 1866 [14 Stat. 178], applies to all dutiable goods, wares and merchandise, and, under the provisions of section 44 of this act, their irregular importation forfeits the goods and subjects the importer to fine or imprisonment.

[Cited in U. S. v. Jordan, Case No. 15,498.]

2. The construction is too liberal which treats the wharf as constructively a part of the vessel; and the removal of dutiable goods from the vessel to place them upon the wharf or dock, subjects them to the hazard of seizure and forfeiture.

[In error to the district court of the United States for the district of New Jersey.]

STRONG, Circuit Justice. After much reflection I have come to the conclusion that a new trial should be ordered in this case. The information claimed a forfeiture of the merchandise under the act of congress of July 18, 1866, and also under the fiftieth section of the act of March 2, 1799 [1 Stat. 665]. The first mentioned of these acts is entitled "An act further to prevent smuggling, and for other purposes," and it is enacted by the fourth section, that "if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any goods, wares or merchandise contrary to law, * * * such goods, wares and merchandise shall be forfeited." The fiftieth section of the act of 1799, enacts that no goods, wares or merchandise brought in any ship or vessel from any foreign port, shall be unladen or delivered from such vessels within the United States but in open day, nor at any time without a permit from the collector and naval officer, if any, for such unlading and delivery.

It was claimed at the trial that the property seized was subject to forfeiture under the act of 1866, because it had been imported "contrary to law." The undisputed evidence was that the claimant was a manufacturer of female clothing in New York, that in March, 1874, he went to London for the sole purpose of buying silks and other goods for his trade. He reached London on the 23d of March, and remained until April 4th. While there he ordered the goods subsequently seized from Marshall & Snellgrove, amounting in value to $10,000 or upwards, and directed them to be sent to his lodgings, where they were sent in parcels wrapped in paper. He asked and received only a single invoice or bill. Having received the goods he went to several stores and purchased eight second hand trunks, which had been much used, and some of which had upon them the initials of former owners. These trunks he directed to be sent to his lodgings. There he

packed in them the goods which he had purchased from Marshall & Snellgrove, putting some in another trunk which contained some of his personal apparel. There was also included a new silk dress, which had been ordered by another party. He placed upon the trunks no other marks than those which were upon them when he bought them. Having thus packed the goods he took them in a cab to the railway station, went with them to Liverpool, and left the trunks at the station until the next day. He then sent the hotel porter with his bag, and had it with the trunks put on board the steamer as his personal luggage. He made no inquiry for a consul, and procured no triplicate invoice as required by the act of congress of March 3, 1863 [12 Stat. 742]. He communicated to no one on the steamer that the trunks were filled with merchandise. He put down the number as nine in the list of the passengers with their luggage, and they were entered, as, of course, upon the ship's manifest as passengers' baggage. When the ship arrived at quarantine, New York, and the revenue officer was engaged in the cabin in taking baggage declarations of the passengers, the claimant told the officer he had some trunks containing merchandise, and the officer being busy told him to wait. He did not however. wait, but went upon the deck, and neither then, nor at any time, made or offered to make any baggage declaration. When the ship came to the dock the trunks were unladen and placed on the wharf, under a permit to land passengers' baggage. There was no permit to land them as merchandise. While they were being landed the officer accosted the claimant, and was told that he had some trunks containing merchandise. He was then asked for the invoice, and he gave to the officer Marshall & Snellgrove's bill, with the heading torn off. The officer then told him he was liable to arrest for importing goods in that way, whereupon he immediately left the ship and the dock, returning no more to the dock, nor going to the custom house, though he heard of the seizure of the property on that day, or the next.

In view of this state of facts, exhibited by the evidence, the first question considered by the district court, and upon which instructions where given to the jury, was whether the property was imported by the claimant "contrary to law," within the meaning of the act of 1866, and whether it was, therefore, subject to forfeiture. The learned district judge was of opinion, and so in effect charged, that the provisions of the act of 1866 had no applicability to the case. That importing goods, subject to duties, without procuring triplicate invoices, and a consular certificate and without their entry upon the ship's manifest as merchandise, is not such an importation as the law permits so far as relates to its mode, and that it is contrary to law does not seem to have been doubted. The act of 1863 applies to all invoices of goods, wares

and merchandise. But the district judge held that the fourth section of the act of July 18, 1866, which enacted that any goods, wares and merchandise imported contrary to law be forfeited, and that the importer should be fined or imprisoned, applied only "to the importation either of special articles where the importation is wholly prohibited, or of merchandise admitted under some conditions or circumstances, and subject to duty, or forbidden under others," and that "it did not include the importation of dutiable goods without the payment of duties." With this construction of the act of 1866, I find myself unable to concur. I agree that the act is to be construed in view of other acts relating to the same subject matter; and, so far as possible, in harmony with them. But if a new provision is introduced into a statute, effect must be given to it, though it changes the prior existing law. It is true the act of 1863, which required triplicate invoices, with a consular certificate, did not prescribe a forfeiture for neglecting to obtain them. It only declared that without them the goods should not be admitted to entry. Forfeiture was prescribed for making entries by means of false invoices or certificates. But all this is not inconsistent with the power of congress to provide other penalties for importing goods without pursuing the prescribed forms of law. The manifest purpose of the act of 1863 was to protect the revenues against smuggling and other frauds. Hence the requisition of triplicate invoices and of the consular certificate, which could not be given without a minute and particular declaration, specifying facts very material to be known by the revenue officers. The act of 1866 professes by its title to be an act further to prevent smuggling. It is practically a remedial act, therefore, in a very just sense, though some of its provisions are penal. It is to be construed with reference to the mischiefs it was intended to remedy. Now, it is plain, the mischiefs in view were not only the introduction into the country of goods, the importation of which was prohibited, but illegal importation of dutiable articles. That dutiable goods were in contemplation of congress is made manifest by the provisions of the third section, which authorizes a search for goods "subject to duty," or "which have been introduced into the United States in any manner contrary to law," and in case they are found, authorizes a seizure of them and a forfeiture. Then follows the fourth section, containing a more general provision, which prescribes forfeiture of any goods imported contrary to law, and imposes a penalty upon the importer. Goods imported in the manner in which the goods now in controversy were imported are, in my judgment, imported contrary to law, as much as if they had been goods which could not legally be imported at all. And I find no warrant for restraining the language used by congress beneath its natural meaning. If it be restrained, as it

was in the district court, the act ceases to be what it professes to be, an act to prevent smuggling, and there exists no penalty for smuggling dutiable goods in the country.

The act of August 30, 1842 [5 Stat. 548], which provides for the punishment of introducing into the United States secretly or clandestinely goods, wares or merchandise subject to duty, and which should have been invoiced, without paying or accounting for the duty, has been omitted in the Revised Statutes, probably because it was supposed to have been supplied by the fourth section of the act of 1866. I cannot think it would be dangerous to hold that the latter act does not apply to illegal importations of goods subjected by law to duties. The only argument against this construction of the act which addresses itself with force to my mind is that it seems harsh. It is said it may result in the forfeiture of goods imported without any criminal intent of the importer. A person it is urged may not know of the act of 1863, or of any of the acts which prescribe the mode in which importations may be made, or he may bring in his trunk, with his personal apparel, a single article which is subject to duty, intending to submit it to the inspection of the revenue officers, and to pay the duty charged upon it. To subject it, under such circumstances to forfeiture, it is urged, would be unnecessarily severe and unreasonable. To this, however, it may be replied, not merely that every person who comes into the country must be presumed to know the law, but that ample provision is made to protect an importer against suffering in consequence of innocent mistakes. The secretary of the treasury is authorized to remit fines, penalties, and forfeitures, if, in his opinion, they have been incurred without wilful negligence or any intention of fraud. This is a sufficient shield to every honest importer. I am aware that in U. S. v. Thomas [Case No. 16,473], Judge Hall, of the Northern district of New York, appears to have entertained an opinion different from that I have expressed. The circumstances of that case were very unlike the facts of the present. It was an indictment not against an importer, but against a person charged with having knowingly and unlawfully received and concealed goods subject to duty, which had been imported without the payment of the duties. The district judge held that the offence charged was not covered by the act of 1866. For aught that appears, the importation in that case was lawful, and all that was unlawful was conduct after the goods had lawfully come into port, or in other words, been imported. In this case the unlawfulness consisted in bringing the goods into port at all, without triplicate invoice and a consular certificate. It must be admitted, however, that the language of the judge implies, though it does not positively assert, that the fourth section of the act of 1866 applies only to importations of articles entirely forbidden, or of

articles allowed to be imported in some specified form or condition. And following the reasoning of Judge Hall, the very learned judge of the district court of New Jersey, so decided in U. S. v. 95 Boxes [Id. 15,891]. After giving careful attention to the subject, I am not convinced that such is the meaning of the statute, and I must therefore hold that there was error in the instruction given to the jury in the present case that the provisions of the fourth section of the act of 1866 were inapplicable to it. It is the uniform practice, as I learn from the highest authority, to treat as subject to forfeiture under this act and the act of 1799, importations through the mails.

I think also there was error in charging the jury, as was done in effect that the removal of the property from the vessel to the dock or wharf, in virtue of a permit to examine and land personal baggage, did not work its forfeiture under the 50th section of the act of 1799. There was no permit to land it as merchandise. The prohibition of the act is that "no goods, wares or merchandise brought in any ships or vessels from any foreign port shall be unladen or delivered from such vessel within the United States but in open day, nor at any time without a permit from the collector and naval officer if any, for such unlading or delivery." This is a prohibition to the carriers as well as to the importer. The carriers only can unlade or deliver. It is intended for greater security to the revenue. Goods, wares and merchandise are not so secure against illegal removal where placed upon the wharf as they are when remaining on the vessel, and I think the construction is too liberal which treats the wharf as constructively a part of the vessel, and a removal of the goods to the wharf as no unlading, though it be made for the purpose of a more convenient examination; it would hardly be contended, I think, that all the cargo entered on the manifest as such, might lawfully be removed, without permit, to the dock, though such removal might possibly facilitate examination. In such a case it could hardly be held that the dock was in any sense a part of the vessel, and that there had been no unlading. The acts of congress, as well as the regulations of the treasury department, recognize a distinction between dutiable goods and personal luggage. Now, if the latter may be placed upon the wharf or dock, it is quite clear the former may not be without a permit, unless at the hazard of seizure and forfeiture. I do not attach as much importance as seems to have been attached to it in the district court to the question whether the claimant procured the unlading of the property. If it was unladen without a permit to unlade merchandise, it was subject to forfeiture under the act of 1799. This is not a proceeding against the importers. It is against the goods imported. They are treated as guilty. If the officers of the ship unladed them in violation of law

and of the rights of the importer, they, or the ship, may be responsible to him. But in this case the jury might very correctly have found that the claimant procured the unlading under a permit to unlade passenger's baggage, and therefore under no sufficient permit. He shipped the trunks and their contents as baggage in Liverpool. He had them put among passenger's baggage in the hold. He gave the officers of the vessel no intimation that the property was not what it appeared to be, passenger's luggage. He did not have it placed upon the ship's manifest. This was as clear an intimation as he could give that it was passenger's baggage, and that it was proper to land it as such. True, he told the revenue officer, he had merchandise in some trunks, but when told to wait until the officer could attend to his case, he left and made no effort to make a baggage declaration. He did not point out his trunks to the officer, nor tell him in which, or in how many of the trunks he had merchandise, and he never told the officer of the vessel that any of his trunks contained dutiable articles. In view of this it is difficult to come to any other conclusion than that the unlading of the trunks, and their transfer from the vessel to the dock, was at his instance and with his consent. Whether it was or not, that it was a violation of the law, I cannot doubt, and I think the jury should have been so instructed. The opinion I have thus expressed harmonizes with the ruling of Judge Blatchford in U. S. v. Three Cases of Merchandise [Case No. 16,498], and with the decision referred to therein. It is in harmony also with U. S. v. Four Packages of Human Hair [unreported], decided by Blatchford, J., in the Southern district of New York, the judgment having been subsequently affirmed in the circuit court. See, also, U. S. v. The Sarah B. Harris [Id. 16,223], and U. S. v. Twenty Cases of Merchandise [Id. 16,559]. And I know of no practice that ought to force a different construction of the act; nor of anything in the treasury regulations. See Judge Blatchford's decision above cited.

I have thus considered the two most important questions in this record. There are some minor ones which it is not important to discuss, in view of what I have said. I concur with the district judge in holding that the act of June 22, 1874 [18 Stat. 186], applies to the case, and that the case is not taken out of that act by the exception contained in the twenty-sixth section. While therefore the question whether there had been collusion between the claimant and the officers of the customs, may have had some bearing upon the other question whether their acts tended to prove a fraudulent intent in the claimant, the absence of such a collusion, if it was absent, does not, it seems to me, negative the illegality of the importation or the fact of unlading without a permit, and the consequent liability of the goods to forfeiture, provided the importer intended to defraud the United States. The court was right in submitting to the jury to find whether such an intent existed. If it did, and the goods were imported contrary to law, or unladen without a permit to unlade merchandise or such goods, the United States were entitled to a verdict, whether there was collusion between the claimant and the custom house officers or not. The case must go back for another trial. Judgment reversed and a venire de novo ordered.

[On the new trial there was a judgment in favor of the United States. Case unreported. This judgment was affirmed by the circuit court. Case No. 15,886.]